IN THE UNITED STATES DISTRICT COURT

NORTH CAROLINA MIDDLE DISTRICT

Case No. 1:09-CV-0818

| | | |
|---|---|---|
| ROBERT HAAS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | **AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| v. | ) ) | |
| MARTIN MATTINGLY, JAMES THOMAS, JULIAN BAKER, FELIX BAKER, STEPHEN DAVIS, BARRY QUART, ARTHUR COHEN, JOSEPH HEALEY, and TRIMERIS, INC., | ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE OF THE ACTION

1. This class action is brought on behalf of the public stockholders of Trimeris, Inc. ("Trimeris" or the "Company") against Trimeris and its Board of Directors (the "Board") or the ("Individual Defendants") alleging violations of Sections 14(d)(4) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act").

2. Specifically, the Individual Defendants have attempted to solicit shareholder proxies in support of a tender offer commenced by Arigene Co., Ltd. and RTM Acquisition Company (collectively "Arigene") (the "Tender Offer") to acquire all the outstanding shares of Trimeris through a cash tender offer for $3.60 per share (the "Proposed Transaction") with the

issuance of a Schedule 14D-9 Recommendation Statement (the "Recommendation Statement") on October 19, 2009 that contains materially misleading information and omissions of material fact.

3. The Tender Offer is set to expire midnight on November 16, 2009. Without imminent court intervention, Plaintiff and the Class will suffer irreparable harm if they must decide whether to tender their shares in the Tender Offer based on a Recommendation Statement that contains materially misleading information and omissions of material fact.

4. Accordingly, this action seeks to enjoin the Proposed Transaction and require Defendants to disseminate an accurate and complete Recommendation Statement that fully and fairly informs shareholders all material information in a non-misleading manner.

## JURISDICTION AND VENNUE

5. The claims asserted herein arise under sections 14(d)(4) and 14(e) of the Exchange Act. 15 U.S.C. § 78n. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

6. Venue is proper in this District because many of the acts and practices complained of herein occurred in substantial part in this District, including the dissemination of the materially misleading statements and omissions alleged herein. In addition, Trimeris maintains its principal executive offices in North Carolina.

## PARTIES

7. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Trimeris.

8. Trimeris is a corporation organized and existing under the laws of the State of Delaware. It maintains its principal corporate offices at 2530 Meridian Parkway, 2nd Floor,

2

Durham, NC 27713, and engages primarily in the commercialization of a class of fusion inhibitors for antiviral drug treatments. Its fusion inhibitors impair viral fusion, a complex process by which viruses attach to, penetrate, and infect host cells. The Company offers FUZEON, a human immunodeficiency virus (HIV) fusion inhibitor and a 36-amino acid synthetic peptide that binds to a key region of an HIV surface protein called gp41 under a collaboration with F. Hoffmann-La Roche Ltd. Its FUZEON inhibitor blocks HIV viral fusion by interfering with certain structural rearrangements within gp41 that are required for HIV to fuse to and enter a host cell. FUZEON is approved in the United States, Canada, and the European Union. The Company also holds TRI-1144, a next generation fusion inhibitor candidate that completed Phase I clinical trials.

9. Defendant Martin Mattingly ("Mattingly") has been the Chief Executive Officer and a director of the Company since 2007.

10. Defendant James Thomas ("Thomas") has been a director of the Company since 2009.

11. Defendant Julian Baker ("J. Baker") has been a director of the Company since 2004.

12. Defendant Felix Baker ("F. Baker") has been a director of the Company since 2004.

13. Defendant Stephen Davis ("Davis") has been a director of the Company since 2007.

14. Defendant Barry Quart ("Quart") has been a director of the Company since 2007.

15. Defendant Arthur Cohen ("Cohen") has been a director of the Company since 2008.

16. Defendant Joseph Healey ("Healey") has been a director of the Company since 2008.

17. Defendants referenced in ¶¶ 9 through 16 are collectively referred to as Individual Defendants and/or the Trimeris Board.

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action on its own behalf and as a class action on behalf of all owners of Trimeris common stock and their successors in interest, except Defendants and their affiliates (the "Class").

19. This action is properly maintainable as a class action for the following reasons:

(a) the Class is so numerous that joinder of all members is impracticable. As of October 19, 2009, Trimeris has approximately 22.35 million shares outstanding.

(b) questions of law and fact are common to the Class, including, inter alia, the following:

(i) Have the Individual Defendants misrepresented and omitted material facts in violation of sections 14(d)(4) and 14(e) of the Exchange Act;

(ii) Is the Class entitled to injunctive relief as a result of Defendants' wrongful conduct.

(c) Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.

(d) Plaintiff's claims are typical of those of the other members of the Class.

(e) Plaintiff has no interests that are adverse to the Class.

(f) The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for Defendants.

(g) Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## SUBSTANTIVE ALLEGATIONS

20. In a press release dated October 2, 2009, the Company announced that it had entered into a merger agreement with Arigene, stating:

> SEOUL, KOREA AND DURHAM, N.C. – October 2, 2009 – Trimeris, Inc. ("Trimeris") (Nasdaq: TRMS) today announced that it has entered into a merger agreement with Arigene Co., Ltd., a Korean corporation traded on the Korean Securities Dealers Association Quotation System ("Arigene") (KOSDAQ: 067850) pursuant to which Arigene has agreed to acquire Trimeris for approximately $81 million through a cash tender offer of $3.60 per share, followed by a merger to acquire all remaining outstanding Trimeris shares at the same price per share paid in the tender offer. The tender offer price represents an approximately 55% premium to Trimeris' average stock price over the last three month period ending on October 1, 2009 and an approximately 40% premium to the closing price of Trimeris' common stock on October 1, 2009.
>
> Stockholders of Trimeris representing approximately 36% of shares outstanding have executed voting agreements in support of the transaction. The transaction has been approved by the boards of directors of Trimeris and Arigene. The parties expect the tender offer and merger to be completed in the fourth quarter of 2009.
>
> The tender offer will expire at midnight Eastern Time on the 20th business day following and including the tender offer commencement date, unless extended in accordance with the terms of the merger agreement and the applicable rules and regulations of the U.S. Securities and Exchange Commission. Following the tender offer, if successful, RTM Acquisition Company, a wholly owned subsidiary of Arigene, will be merged with and into Trimeris, with Trimeris continuing as the surviving corporation. As

a result of the merger, Trimeris will become a wholly-owned subsidiary of Arigene.

21. On October 19, 2009, the Company filed a Schedule 14D-9 Recommendation Statement (the "Recommendation Statement") with the SEC in furtherance of soliciting shareholder support for the Proposed Transaction.

22. The Recommendation Statement fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision on whether to tender their shares in favor of the Proposed Transaction.

23. For example, the Recommendation Statement completely fails to disclose the underlying methodologies, projections, key inputs and multiples relied upon and observed by Goldman, Sachs & Co. ("Goldman Sachs"), the Company's financial advisor, so that shareholders can properly assess the credibility of the various analyses performed by Goldman Sachs and relied upon by the Board in recommending the Proposed Transaction. In particular, the Recommendation Statement is deficient and should provide, *inter alia*, the following:

> (i) The "numerous other assumptions with respect to general business, economic, regulatory, legal, market and financial conditions, as well as matters specific to the Company's business" that the financial projections were based on.
>
> (ii) The criteria used to select a terminal value of zero used in the *Illustrative Discounted Cash Flow Analysis*.
>
> (iii) The definition of "free cash flows" utilized by Goldman Sachs in the *Illustrative Discounted Cash Flow Analysis*.
>
> (iv) The criteria utilized by Goldman Sachs to select the transactions used in its *Selected Transactions Analysis*, i.e. how these companies were similar to the Company's "results, market size, and product profile."
>
> (v) The premiums observed and transaction value for each transaction in the *Selected Transactions Analysis*.

6

  (vi)  The criteria utilized by Goldman Sachs to select the companies used in its *Selected Company Trading Multiples Analysis.*

  (vii)  The multiples observed for each company in the *Selected Company Trading Multiples Analysis*.

  (viii)  Trimeris' 2009E Revenue and 2010E Revenue used in the *Selected Company Trading Multiples Analysis*.

24. Also, the Company retained Goldman Sachs to explore potential strategic alternatives, but the Recommendation Statement fails to provide material disclosures concerning the process and criteria Goldman Sachs utilized to explore alternatives and identify potential partners. In particular, the Registration Statement states that in May 2006, the Company retained Goldman Sachs "to help the Company explore strategic alternatives, chief of which was a potential sale of the Company to a third party," but it fails to disclose which other alternatives, other than a sale of the Company, were explored and the steps undertaken to pursue such alternatives. In addition, the Recommendation Statement fails to inform the shareholders regarding the criteria implemented by Goldman Sachs in assembling a list of 30 potential buyers that Goldman Sachs contacted in 2006 and 2007, and how many of those contacted were strategic buyers and how many were financial buyers.

25. The Recommendation Statement also fails to describe material information concerning discussions and negotiations with potential partners and Arigene. For example, the Recommendation Statement:

  (i)  States that Goldman Sachs approached Company, "a company identified by the Company as particularly suitable as a potential acquisition," but it fails to disclose the reasons Company A was considered particularly suitable for a potential acquisition, as well as whether Company A was a strategic of financial partner.

  (ii)  Fails to disclose the reasons Company A was not receptive to Goldman Sachs' initial approach.

7

(iii)   Fails to disclose the value and form of consideration of Company B's expressed interest in purchasing the Company in August 2007.

(iv)    Fails to disclose whether Company B was solicited or unsolicited, the amount of its stock ownership of the Company, and whether Company B was a strategic or financial partner.

(v)     Fails to disclose the reasons the Company announced a "shift in strategic focus" in late 2007, and how this shift impacted the sales process.

(vi)    Fails to disclose whether Company B indicated a reason it was no longer interested in pursuing a transaction in the first quarter of 2008.

(vii)   Fails to disclose whether Company E indicated the reasons it was not interested in partnering to develop the Company's TRI-1144 drug candidate.

(viii)  Fails to disclose material information concerning Company C's April 18, 2008 offer, including a) the value and form of consideration of its proposal; b) the specific proposals for modifying the Company's business plan that its offer was conditioned upon; and c) the reasons the Company concluded on April 18, 2008 as well as June 2008 that such modifications were not feasible.

(ix)    Fails to disclose the reasons the Board determined on November 17, 2009 that Company D's offer to purchase the Company for $4.00 per share was inadequate.

(x)     Fails to disclose material information concerning Company F's July 30, 2009 offer, including a) what the contingent value rights payments in each proposal was based on, and b) the reasons the Board were disinclined to accept the $3.25 per share/$1.00 contingent payment right proposal.

(xi)    The reasons the Company determined to seek a $0.10 increase in Company F's offer in return for obtaining no contingent value rights payments.

(xii)   The reasons the Company entered into the Proposed Transaction with Arigene before waiting to see whether Company D would obtain financing and propose a higher offer.

8

It is absolutely necessary for shareholders to receive a Recommendation Statement that provides all material disclosures related to the sales process in order for shareholders to be able to cast a fully informed decision regarding the Proposed Transaction.

26. The Recommendation Statement further neglects to provide shareholders with sufficient information to evaluate the pros and cons associated with the other strategic alternatives, other than the sale of the Company, including the values and risks associated with Recommendation Statement remaining as a stand-alone Company -- information which is vital to shareholders in deciding whether to tender their shares in the Tender Offer. For example, the Recommendation Statement states that in as part of its "Reasons for the Recommendation", the Board considered the strategic alternatives reasonably available to the Company including "the perceived risks and benefits of any such alternatives, including the timing and likelihood of consummating any such alternative, and the Board's view that the Offer and Merger present a superior opportunity to any such reasonably available alternatives," but it fails to disclose what those alternative were, the risks and benefits of each alternative, and the reasons the Proposed Transaction was the superior opportunity.

27. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## COUNT I

### Violations of Section 14(d)(4) and 14(e) of the Exchange Act

28. Plaintiff repeats all previous allegations as if set forth in full herein.

29. Defendants have issued the Recommendation Statement with the intention of soliciting shareholder support of the Proposed Transaction.

30. Sections 14(d)(4) and 14(e) of the Exchange Act require full and complete disclosure in connection with tender offers. Specifically, Section 14(e) provides that:

9

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative

31. The Recommendation Statement violates the Sections 14(d(4) and 14(e) because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

32. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**PRAYER**

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

(A) declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B) declaring that the Recommendation Statement is materially misleading and contains omissions of material fact in violation of Sections 14(d)(4) and 14(e) of the Exchange Act;

10

(C) enjoining, preliminarily and permanently, the Proposed Transaction until Defendants remedy the Recommendation Statement's material deficiencies and otherwise render the statements contained therein complete and non-misleading;

(D) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(E) granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

This is the 29th day of October 2009.

**THE EDMISTEN & WEBB LAW FIRM**

 /s/ *William Woodward Webb*
NC State Bar No. 4624
127 West Hargett Street
Suite 104 (27601)
Post Office Box 1509
Raleigh, North Carolina 27602
Telephone: (919) 831-8700
Facsimile: (919) 831-8749
woodywebb@ew-law.com

**OF COUNSEL**
LEVI & KORSINSKY, LLP
Eduard Korsinsky
Juan E. Monteverde
W. Scott Holleman
30 Broad Street, 15th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171